UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARL D. LEWIS and <br> CAROLYN LEWIS, <br><br> Plaintiffs, <br><br> v. <br><br> KEEN TRANSPORT, INC. and <br> BRIAN E. CRAIG, <br><br> Defendants. <br> _____ <br><br> KEEN TRANSPORT, INC. <br><br> Defendant/Third Party Plaintiff <br><br> v. <br><br> XL SPECIALIZED TRAILERS, INC., <br> LONE STAR TRANSPORTATION, <br> LLC, and G.A.S. INVESTMENTS <br> CORPORATION, <br><br> Third Party Defendants. | No. 09 C 3912 <br><br> District Judge Joan H. Lefkow <br><br> Magistrate Judge Susan E. Cox |

MEMORANDUM OPINION AND ORDER

Plaintiffs bring a motion to compel production of a handwritten document that was created by defendant Brian Craig. Defendants oppose this motion arguing that the document is protected by the attorney-client privilege or by the work product doctrine. The Court has reviewed the document *in camera*, and the parties' submissions, and finds neither protection applicable. Therefore, plaintiffs' motion to compel is granted [dkt. 77].

**BACKGROUND**

Plaintiffs brought this suit alleging that the negligence of defendant Keen Transport, Inc. ("Keen") and its employee, defendant Brian Craig ("Craig"), resulted in personal injuries to plaintiff Carl Lewis ("Lewis"). According to the complaint, on September 15, 2008, Lewis was injured when a truck axle fell off of a fork lift that was being operated by Craig.[1] Sometime after the accident, Craig handwrote a statement describing the incident ("the statement"). At the top of the statement is the phrase: "This made for the purpose of possible future litigation."

To provide some factual context around the creation of the statement, defendants submit affidavits from two Keen employees, Greg Anderson ("Anderson") and Pete Trimble ("Trimble"). Anderson is an office manager at Keen's Aurora facility, where the accident occurred.[2] Trimble is the Corporate Safety and Claims Director at Keen.[3] Trimble, it appears, does not work at the Aurora facility.[4] According to the affidavits, as soon as Trimble heard about the accident, he called an insurance representative.[5] He also states that on that same day he spoke with defense counsel, Steven Krkljes ("Krkljes"), who remains counsel of record in this action.[6] According to Trimble, Krkljes advised him, "that if any statements were taken that such statements should be clearly identified as being for the purpose of possible future litigation."[7] Trimble states that he then relayed this instruction to the Aurora facility.[8] Anderson confirms that he received this direction from Trimble.[9] While the exact timing of these conversations is unknown, Trimble states that they all

---

[1] Sec. Am. Compl. ¶¶ 24, 32 [dkt. 61].
[2] Defs.' Response, Ex. B, Affidavit of Greg Anderson ¶¶ 2,3 [dkt. 92].
[3] Defs.' Response, Ex. A, Affidavit of Pete Trimble ¶ 1 [dkt. 92].
[4] Defs.' Response, Ex. A, Affidavit of Pete Trimble ¶ 1 [dkt. 92].
[5] Defs.' Response, Ex. A, Affidavit of Pete Trimble ¶ 3 [dkt. 92].
[6] Defs.' Response, Ex. A, Affidavit of Pete Trimble ¶ 4 [dkt. 92].
[7] *Id.*
[8] Defs.' Response, Ex. A, Affidavit of Pete Trimble ¶ 5 [dkt. 92].
[9] Defs.' Response, Ex. B, Affidavit of Greg Anderson ¶ 3 [dkt. 92].

occurred on the morning of September 15, 2008.[10]

The precise timing of when Craig wrote the statement is also unclear. According to Anderson, via affidavit, Craig wrote the statement the day after the accident, on September 16, 2008.[11] Specifically, Anderson states that he wrote the phrase, "This made for the purpose of possible future litigation" on the top of a piece of paper (that next day) and then gave the paper to Craig and Craig wrote his account of the events.[12] Trimble states that he reviewed the statement and "it is not the type of document that is created in the regular course of business of Keen when investigating accidents."[13]

But Craig also testified in his deposition that he wrote a "report" approximately thirty minutes after the accident.[14] It is not clear whether this "report" is the statement, or something else. The only other accident report that the Court is aware of is an "Industrial Accident Investigation Report," which is dated September 17, 2008, and it is unclear who wrote it.[15] This report may relate to an exhibit plaintiffs submitted, which shows that it is a Keen policy for employees to complete "required state forms" following accidents.[16]

This lawsuit was then filed on June 29, 2009.[17] Initially, the complaint named only Keen as a defendant.[18] Keen responded to discovery on June 4, 2010, but did not advise plaintiffs of the existence of Craig's statement because, apparently, defendants were not aware of its existence.[19]

---

[10]Defs.' Response, Ex. A, Affidavit of Pete Trimble ¶ 6 [dkt. 92.].
[11]Defs.' Response, Ex. B, Affidavit of Greg Anderson ¶ 4 [dkt 92].
[12]Defs.' Response, Ex. B, Affidavit of Greg Anderson ¶ 4 [dkt. 92].
[13]Defs.' Response, Ex. A, Affidavit of Pete Trimble ¶ 7 [dkt. 92].
[14]Plfs.' Memo. in Sup. of Mtn., Ex. 7, Deposition of Brian Craig [dkt. 78-7].
[15]*See* Plfs.' Reply, Ex. 2 [dkt. 93-2].
[16]*See* Plfs.' Reply, Ex. 1 [dkt. 93-1].
[17]Compl. [dkt. 1].
[18]*See* Compl. [dkt. 1].
[19]*See* Defs.' Response ¶ 9 [dkt. 92].

On August 6, 2010, Plaintiffs filed a Second Amended Complaint adding Craig as a defendant[20] and issued discovery requests to Craig. In discovery responses dated October 7, 2010, defendants identified the statement.[21]

**DISCUSSION**

Plaintiffs now seek production of the statement, but defendants argue that the statement is shielded from production because of the attorney-client privilege or work product doctrine. Upon the filing of this motion, we requested the statement from defendants to review *in camera.* We note that Defendants have filed two responses to this motion: the first immediately after plaintiffs filed the motion, which argues only that the attorney-client privilege applies; and the second after the parties appeared in Court, which addresses the work product doctrine as well.[22]

**A.     Attorney-client Privilege**

Defendants primarily argue that the statement is protected by the attorney-client privilege. In diversity actions, state law of the forum state governs our analysis of the attorney-client privilege.[23] The purpose of the attorney-client privilege is to promote full and frank communications between a client and attorney, by removing the threat of revealing those communications at trial.[24] The Illinois Supreme Court has outlined the following eight elements that make up the attorney-client privilege:

> (1) where legal advice of any kind is sought, (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are permanently protected, (7) from disclosure by himself or the legal

---

[20]Sec. Am. Compl. [dkt. 61].
[21]*See* Defs.' Response ¶ 9 [dkt. 92].
[22]*See* dkts. 88, 92.
[23]Fed. R. Evid. 501; *Urban Outfitters, Inc. v. DPIC Companies, Inc.*, 203 F.R.D. 376, 378-79 (N.D.Ill. 2001).
[24]*Pietro v. Marriott Senior Living Services, Inc.*, 810 N.E.2d 217, 226 (Ill.App.Ct. 2004)*; see also* Illinois Supreme Court Rule 201(b)(2).

advisor, (8) except the protection be waived. [25]

The party claiming the privilege bears the burden of establishing that the necessary elements exist.[26] Further, we are mindful that, "the privilege ought to be strictly confined within its narrowest possible limits."[27]

Defendants have not persuaded us that the privilege applies to the statement. The parties agree that the statement was not given to an attorney until after the Second Amended Complaint was filed and the document was found. There is also no evidence showing that Craig spoke to an attorney prior to making the statement. Because the statement was not given to an attorney, and Craig did not speak to an attorney, the statement was not made for the purpose of seeking legal advice. To apply the attorney-client privilege, then, to this circumstance would ignore the requirement that it "be strictly confined to its narrowest possible limits."[28]

Defendants argue, however, that Keen contacted its attorney and that its attorney-client relationship should, somehow, extend to its employee, Craig, and the statement. The only way that the attorney-client privilege could extend in such a situation would be, however, to apply what Illinois has termed the "control group" test.[29] This test provides that a corporation's attorney-client privilege covers its corporate representatives where there are discussions between an attorney and only members of the corporation's "control group," which are typically employees in top management positions.[30] We must emphasize, however, that defendants have not argued the application of this test or cited to it in their brief.

---

[25]*Illinois Educ. Ass'n v. Illinois State Bd. of Educ.*, 791 N.E.2d 522, 529 (Ill. 2003).
[26]*Pietro*, 810 N.E.2d at 226.
[27]*Waste Management, Inc. v. International Surplus Lines Ins. Co.*, 579 N.E.2d 322, 328 (Ill. 1991).
[28]*Id.*
[29]*Consolidation Coal Co. v. Bucyrus-Erie Co.*, 432 N.E.2d 250, 256-58 (Ill. 1982).
[30]*Id.*

Even so, if we apply this "control group" test here, the privilege can only extend if Craig communicated directly with counsel, Krkljes (or directed the statement to him). The privilege applies only if "the communication originated in a confidence that it would not be disclosed, was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained confidential."[31] The attorney-client privilege, then, would not extend even under this test.

**B.      Work-Product Doctrine**

Defendants alternatively claim that the statement is protected by the work-product doctrine. The work product doctrine is governed by federal law and is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure.[32] Rule 26(b)(3) states that a party may not discover materials that are (1) documents or tangible things, (2) prepared in anticipation of litigation or for trial, and (3) by or for a party or by or for a party's representative.[33] As with the attorney-client privilege, the burden falls on the party claiming the doctrine to establish the necessary elements.[34]

The "threshold issue" in any work product determination is whether the document was created in anticipation of litigation.[35] Documents created in the ordinary course of business are not considered work product.[36] "To establish work product protection, a party must show the primary motivating purpose behind the creation of a document was to aid in possible future litigation."[37] A document created when litigation is only "in the air," for example, is not work product.[38] Instead,

---

[31]*Id.* at 257.
[32]*CSX Transp., Inc. v. Lexington Ins. Co.*, 187 F.R.D. 555, 560 (N.D.Ill. 1999).
[33]*Caremark, Inc. v. Affiliated Computer Services, Inc.,* 195 F.R.D. 610, 613-14 (N.D.Ill. 2000) (citing 8 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2024 (1994)).
[34]*Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976 (7th Cir. 1996).
[35]*Caremark, Inc.*, 195 F.R.D. at 614.
[36]*Id.*
[37]*Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 321 (N.D. Ill. 2008).
[38]*IBJ Whitehall Bank & Trust Co. v. Cory & Associates, Inc.*, No. 97 C 5827, 1999 WL 617842, at *5 (Aug. 12, 1999).

"because litigation can be anticipated at the time almost any incident occurs, a substantial and significant threat of litigation is required before a discovery opponent's anticipation will be considered a reasonable and justifiable motivation for production of a document."[39] This substantial and significant threat can be shown by "objective facts establishing an identifiable resolve to litigate."[40]

Though not cited to by the parties, we find helpful Judge Valdez's review of the application of the work product doctrine in *Resurrection Healthcare and Factory Mutual Insurance Company v. GE Health Care*.[41] In that case, the plaintiff hospital brought suit against the defendant for negligently spilling mercury on the hospital's floor.[42] The motion before the court involved four documents that were created during the defendant's investigation of the spill.[43] The documents included interviews with defendant's employees who were present during the spill and a written statement by one of the employees.[44] In concluding that the documents were not work product, Judge Valdez stated, "[t]he documents at issue were created almost six months to over one year before the lawsuit was filed, and [defendant] has offered no objective facts demonstrating an identifiable resolve to litigate before that date."[45] The court found that "extensive" contamination at the hospital that caused the defendants to believe that "litigation was likely," were not sufficient objective facts showing a resolve to litigate.[46] The court also concluded that the defendant had failed to establish that the investigation was "performed solely for the purpose of litigation."[47]

---

[39]*Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 145 F.R.D. 84, 87 (N.D. Ill. 1992) (citing *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 659 (S.D. Ind. 1991).
[40]*Binks Mfg. Co. v. National Presto Industries, Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983).
[41]No. 07 C 5980, 2009 WL 691286 (N.D. Ill. Mar. 16, 2009).
[42]*Id.* at *1.
[43]*Id.*
[44]*Id.*
[45]*Id.* at *2.
[46]*See Id.* at *1-2.
[47]*Id.* at *2.

In one respect our case is distinguishable; here, the statement was not created in the ordinary course of business. First, the statement was written on a blank piece of paper, as opposed to a Keen pre-printed form. Trimble has also reviewed the statement and confirms that it is not a document typically made during investigations conducted by Keen. Further, two days later an "official" report was created regarding the same accident, which was produced in accordance with Keen's policy. Nevertheless, there are other facts, similar to *Resurrection Healthcare,* that make the work product doctrine inapplicable.

Specifically, as in *Resurrection Healthcare,* the defendants in this case have failed to carry their burden in demonstrating that the statement was created as a result of a substantial and significant threat of litigation. The statement was made either thirty minutes, or one day after, the accident occurred, which was nine months before the lawsuit was filed. The mere fact that Lewis *may* have had a claim against defendants is not enough. As in *Resurrection Healthcare*, the defendants here have not established objective facts showing that there was a resolve to litigate at the time the statement was made.[48]

As a final point, we emphasize that work product must be created with the motivation to *aid* in possible future litigation.[49] In other words, the document must be of a legal nature and "primarily concerned with legal assistance; technical information is otherwise discoverable."[50] Here, the statement "contains no legal advice and is not of a legal nature. Rather, it contains purely factual

---

[48]*Compare Resurrection Healthcare,* No. 07 C 5980, 2009 WL 691286 *with Ocean Atl. Dev't Corp. v. Willow Tree Farm, LLC*, No. 01 C 5014, 2002 WL 1968581, at * 5 (N.D.Ill. Aug.23, 2002) (finding an identifiable "prospect of litigation" where defendant "frequently reference[d] its fear that [plaintiff] would file suit against it ... and remark[ed] on [plaintiff's] litigious nature").
[49]*Grochocinski*, 251 F.R.D. at 321.
[50]*Caremark, Inc.*, 195 F.R.D. at 615 (citing *Loctite Corporation v. Fel-Pro, Inc*., 667 F.2d 577, 582 (7th Cir.1981)).

information, summarizing [Craig's] recollection of the accident."[51]

## CONCLUSION

We conclude that defendants have not carried their burden to demonstrate that either the attorney-client privilege or the work product doctrine bars discovery of the statement. Therefore, plaintiffs' motion to compel is granted [dkt. 77].

**IT IS SO ORDERED**.

**ENTERED: February 28, 2011**

                                            **UNITED STATES MAGISTRATE JUDGE**
                                            **Susan E. Cox**

---

[51] *See Gregorio v. Yellow Transp., Inc.*, No. 08 C 6257, 2009 WL 3756493, at *2 (N.D. Ill. Nov. 5, 2009).